CIRCUS CIRCUS HOTELS, INC., AND LOYAL BORDEN, APPELLANTS, v. JERRY WITHERSPOON, RESPONDENT.

No. 13811

January 27, 1983                              657 P.2d 101

---

[3]SENIOR JUSTICE DAVID ZENOFF was appointed to participate in the decision of this matter in the place and stead of THE HONORABLE E. M. GUNDERSON, Justice, pursuant to the Nevada Constitution, art. 6, § 19(1)(a) and 19(1)(c), and SCR 10.

*Shamberger, Georgeson, McQuaid & Thompson, Chtd.,* Reno; *Carl E. Lovell, Jr.,* Las Vegas, for Appellants.

*Terry A. Friedman,* Reno, for Respondent.

## OPINION

*Per Curiam:*

Respondent obtained a $55,500 general verdict against appellants predicated on defamation and interference with prospective contractual relations. Appellants contend that the district court committed prejudicial error by admitting into evidence a letter from Circus Circus Hotels, Inc. to the Nevada Employment Security Department, and by leaving certain questions of privilege to the jury. We agree with appellants, and therefore reverse and remand for a new trial.

## THE FACTS

In December 1979, respondent Witherspoon was working in Reno for appellant Circus Circus Hotels, Inc., as a craps boxman and floorman. On December 20, 1979, a Nevada Gaming Control Board agent allegedly saw Witherspoon "past post" a toke bet (a bet made for the dealers as a gratuity). Past posting a wager constitutes the crime of swindling. NRS 465.070(1).

On December 21, Circus Circus Hotels' Reno casino manager, appellant Loyal Borden, discharged Witherspoon on the basis of the agent's observation. Witherspoon contacted his attorney, who advised him to seek other employment before considering a lawsuit against Circus Circus. Witherspoon attempted to find work in the gaming industry for several months, but was unsuccessful. On his job applications, he indicated that he had been accused of theft at Circus Circus, although his termination slip had stated only that he had not complied with company policy.

Some prospective employers contacted Loyal Borden concerning the reasons for Witherspoon's termination. A former shift manager at the Ponderosa in Reno testified that Loyal Borden had told him that Witherspoon "was a good kid, and he went sour." This meant to the shift manager that Witherspoon was a thief or a drinker, or was missing a lot of shifts. The shift manager also testified that Borden had said Circus Circus was "going to try to keep him [Witherspoon] from going to work" in the gaming industry.

Patricia Kice, Circus Circus' personnel director, sent a letter to the Nevada Employment Security Department requesting an appeal of a grant of unemployment benefits to Witherspoon. The letter stated that Witherspoon had been terminated on the basis of a Gaming Control agent's observation of Witherspoon

past-posting a wager; it also stated that the request for an appeal was

> based on Section 612.383 of the Nevada law that provides "an individual who has been discharged for commission of . . . embezzlement . . . (which) has resulted in a conviction in a court of competent jurisdiction" [shall be denied benefits].

Witherspoon testified that he has never been arrested for a gaming incident or charged by the Gaming Control Board with theft or embezzlement.

All of the above evidence was presented to the jury at trial. Appellants objected to the admission into evidence of the Kice letter to the Employment Security Department. Appellants also presented several instructions concerning absolute and conditional privilege that the district court refused.

### THE LETTER TO THE EMPLOYMENT SECURITY DEPARTMENT WAS ABSOLUTELY PRIVILEGED

The district court recognized that NRS 612.265(7)[1] creates an absolute privilege for all oral or written communications from an employer to the Employment Security Department, provided that the communications are made pursuant to Chapter 612. *See* Georgia Power Co. v. Busbin, 250 S.E.2d 442 (Ga. 1978); Sias v. General Motors Corp., 127 N.W.2d 357 (Mich. 1964); Krenek v. Able, 594 S.W.2d 821 (Tex.Civ.App. 1980). *See* Green v. Hoiriis, 103 S.2d 226 (Fla.App. 1958).

The statute is based on the long-standing common law rule that communications uttered or published in the course of judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject of controversy. *See* Drummond v. Stahl, 618 P.2d 616 (Ariz.App. 1980), *cert. denied,* 450 U.S. 967 (1981); Prosser, *Handbook of the Law of Torts,* § 114 at 777-79 (4th ed. 1971). The absolute privilege precludes liability even where the defamatory statements are published with knowledge of their falsity and personal ill will toward the plaintiff. Skinner v. Pistoria, 633 P.2d 672 (Mont. 1981); Stafford v. Garrett, 613 P.2d 99 (Or.App. 1980); Prosser, *supra,* at 777.

---

[1]NRS 612.265(7) provides as follows:

> All letters, reports or communications of any kind, oral or written, from the employer or employee to each other or to the employment security department or any of its agents, representatives or employees are privileged and shall not be the subject matter or basis for any lawsuit if such letter, report or communication is written, sent, delivered or prepared pursuant to the requirements of this chapter.

The policy underlying the privilege is that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements. *See* Ducosin v. Mott, 642 P.2d 1168 (Or. 1982); Fairbanks Pub. Co. v. Francisco, 390 P.2d 784 (Alaska 1964); Sampson v. Rumsey, 563 P.2d 506 (Kan.App. 1977). On the basis of this policy, the absolute privilege attached to judicial proceedings has been extended to quasi-judicial proceedings before executive officers, boards, and commissions, including proceedings in which the administrative body is considering an employee's claim for unemployment compensation. *See* Krenek v. Able, 594 S.W.2d 821 (Tex.Civ.App. 1980); White v. United Mills Co., 208 S.W.2d 803 (Mo.App. 1948) (applying Kansas law); Annot., 45 A.L.R.2d 1296 (1956).

In the instant case, the district court misunderstood the relevancy requirement attached to the privilege. The court construed the statute not to privilege "irrelevant or nonfactual defamatory information or opinions," but only "relevant factual information." However, the test of relevancy is very broad. The defamatory material need not be relevant in the traditional evidentiary sense, but need have only "some relation" to the proceeding; so long as the material has some bearing on the subject matter of the proceeding, it is absolutely privileged. Cooperstein v. Van Natter, 611 P.2d 1332 (Wash.App. 1980); Tiedemann v. Superior Court, 148 Cal.Rptr. 242 (Cal.App. 1978); Annot., 38 A.L.R.3d 272, 279-83, 288-98, 311 (1971).

The allegedly defamatory statement regarding Witherspoon's supposed "embezzlement" was pertinent to the Department's decision concerning whether to grant or deny Witherspoon's unemployment benefits on appeal on the basis of misconduct by Witherspoon. As counsel for appellants noted at trial, the purpose of the statute is to encourage employers and employees to submit any and all potentially relevant information to the Employment Security Department that might bear on an employee's right to receive unemployment compensation, without fear of civil liability. *See* Greene v. Hoiriis, *supra,* 103 S.2d at 228. The statute also promotes the vigorous contesting of grants of benefits. Georgia Power Co. v. Busbin, *supra,* 250 S.E.2d at 445. Therefore, the district court

erred in admitting the letter from Circus Circus to the Employment Security Department and in allowing testimony and argument concerning the letter.

The district court also erred in leaving to the jury the question of whether the letter's content was sufficiently relevant to fall within the absolute privilege. Absolute privilege and relevance are questions of law for the court to decide. Cooperstein v. Van Natter, *supra,* 611 P.2d at 1336 n.2; Franklin v. Blake, 525 P.2d 945, 946 (N.M.App. 1974).

## WHETHER A CONDITIONAL PRIVILEGE EXISTS IS A QUESTION OF LAW

Loyal Borden, in response to one query for information concerning Witherspoon's discharge, stated that Witherspoon "was a good kid, and he went sour." Appellants contend that the district court erred by leaving to the jury the question of whether this allegedly defamatory communication was made on a "privileged occasion." We agree.

A qualified or conditional privilege exists where a defamatory statement is made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or a duty, if it is made to a person with a corresponding interest or duty. Scarpelli v. Jones, 626 P.2d 785 (Kan. 1981); Hamm v. Merrick, 605 P.2d 499 (Hawaii 1980); Annot., 60 A.L.R.3d 1080, 1084-90 (1974). Whether a particular communication is conditionally privileged by being published on a "privileged occasion" is a question of law for the court; the burden then shifts to the plaintiff to prove to the jury's satisfaction that the defendant abused the privilege by publishing the communication with malice in fact.[2] Gallues v. Harrah's Club, 87 Nev. 624, 626 n.2, 491 P.2d 1276, 1277 n.2 (1971); Abrahamsen v. Mountain States Tel. & Tel. Co., 494 P.2d 1287 (Colo. 1972); Roscoe v. Schoolitz, 464 P.2d 333 (Ariz. 1970). The question goes to the jury only if there is sufficient evidence for the jury reasonably to infer that the publication was made with malice in fact. Aspell v. Amer. Contract Bridge League, 595 P.2d 191 (Ariz.App. 1979); Annot., 60 A.L.R.3d 1080, 1090 (1974).

---

[2] A conditional privilege may be abused by publication in bad faith, with spite or ill will or some other wrongful motivation toward the plaintiff, and without belief in the statement's probable truth. *See* Gallues v. Harrah's Club, 87 Nev. 624, 627, 491 P.2d 1276, 1277 (1971). *See also* R. Sack, *Libel, Slander, and Related Problems* §§ II.2 at 42-43, VI.4.1 at 329-33 (1980).

The district court in the instant case erred by leaving to the jury the initial question of whether Loyal Borden's statements were conditionally privileged. The jury could have either concluded incorrectly that Borden's remarks were not privileged at all,[3] or concluded that he made the remarks with malice in fact.

As the jury may have relied on otherwise privileged evidence of defamation to find for Witherspoon in its general verdict, we must reverse and remand for a new trial. *See* Sunkist v. Winckler & Smith Co., 370 U.S. 19, 29-30 (1962); Ross v. Giacomo, 97 Nev. 550, 556, 635 P.2d 298, 302 (1981). Given our disposition of this case, we need not reach the other contentions on appeal.

Reversed and remanded for a new trial.

SPRINGER, MOWBRAY, and STEFFEN, JJ., and ZENOFF, SR. J.,[4] concur.

---

[3]A former employer has a qualified or conditional privilege to make otherwise defamatory communications about the character or conduct of former employees to present or prospective employers, as they have a common interest in the subject matter of the statements. Walsh v. Consolidated Freightways, Inc., 563 P.2d 1205 (Or. 1977); Gengler v. Phelps, 589 P.2d 1056 (N.M.App.) (per Sutin, J., with two Judges concurring in result), *cert. denied,* 588 P.2d 554 (N.M. 1979). *See* R. Sack, *Libel, Slander, and Related Problems* § VI.3.3.1 at 305 (1980).

[4]SENIOR JUSTICE DAVID ZENOFF was appointed to participate in the decision of this matter in the place and stead of THE HONORABLE E. M. GUNDERSON, Justice, pursuant to the Nevada Constitution, art. 6, § 19(1)(a) and 19(1)(c), and SCR 10.