[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 9906
By pleading dated December 13, 1999, the plaintiff filed a revised complaint against the defendant. The counts set forth the following claims:
In Count I, the plaintiff alleges that he has been an attorney licensed to practice law in Connecticut for several years and that from 1987 he and the defendant, a school teacher, maintained a personal, romantic, and sexual relationship. He further alleges that on or about October, 1994, the defendant untruthfully alleged to Paul Slyman, acting as an agent for the plaintiff's employer, that he had been physically abusive to her, that he had made threats to kill various individuals, and that he had followed or lain in wait for her. He further alleges that in October, 1994, the defendant executed written affidavits containing these untruthful allegations to Paul Slyman, and that she reaffirmed these written allegations before and during an arbitration hearing relating to the plaintiff's employment in April, 1997. The plaintiff alleges that these actions by the defendant constitute the tort of intentional infliction of emotional distress. Count II is a repetition of the factual allegations contained in Count I, but in this count they are framed as the negligent infliction of emotional distress. Count III contains the same factual allegations with the additional claim that the defendant's words were false and malicious and implied that the plaintiff had committed various crimes. This count sounds in libel. Count IV repeats the factual allegations of the previous counts but is framed as a claim of slander. Count V is limited to the allegations regarding the defendant's conduct in 1994, claiming that she then made certain untruthful statements and executed untruthful affidavits regarding his behaviors. This count constitutes a claim of libel. Count VI is also confined to the statements and affidavits allegedly provided in 1994 and is framed as a slander claim. Count VII alleges that the defendant made certain untruthful statements before and during an arbitration hearing on his employment in April 1997, which statements, he claims, constitute the tort of libel. Finally, Count VIII repeats the allegations of Count VII but frames them as the tort of slander. The plaintiff claims that because of the defendant's various statements and testimony he was discharged from employment and suffered attendant economic and non economic damages. CT Page 9907
In response, the defendant has filed a motion for summary judgment claiming that all of the defendant's statements were protected by the law of testimonial immunity. Additionally, she claims that several of the plaintiff's claims are barred by applicable statute of limitations. Thus, she claims, she is entitled to judgment as a matter of law.
"Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Home Ins. Co. v. Aetna Life CasualtyCo., 235 Conn. 185, 202 (1995). In ruling on a motion for summary judgment, the trial court's function is not to decide issues of material fact, but rather to determine whether such issues exist. Telesco v.Telesco, 187 Conn. 715, 718 (1982). The party opposing a motion for summary judgment must set forth a sufficient factual predicate to demonstrate that the moving party is not entitled to judgment as a matter of law.
Documentation provided to the court in conjunction with this motion indicates that at some point prior to 1994, the plaintiff and defendant had a romantic relationship which had been terminated by the defendant. Subsequently, the defendant complained orally and in writing to an investigator for the State's Attorney that the plaintiff had engaged in certain behaviors causing her fear for her physical well-being and emotional upset. Following an investigation by the Chief State's Attorney's office, the plaintiff's employment was terminated on May 9, 1995.
During his employment with the Division of Criminal Justice (Division), the plaintiff had been a member of the Connecticut Prosecutors Local 1437, Council 4, AFSCME, AFL-CIO (Union). Pursuant to the terms of a collective bargaining agreement (Agreement) between the Division and the Union, the Union filed a grievance on behalf of the plaintiff regarding his employment termination. In accordance with the terms of the collective bargaining agreement, the Union and Division submitted their dispute regarding the plaintiff's termination to binding arbitration which resulted in an award and opinion dated July 10, 1997. After hearing evidence and considering the parties' submissions, the arbitrator determined that the Division had just cause to discharge the plaintiff and, accordingly, denied the Union's grievance.[1]
The defendant asserts that the plaintiff's claims are barred by the applicable statute of limitations. The plaintiff's allegations relate to two time periods: statements made to Paul Slyman in 1994 and statements made before and during the arbitration proceedings in 1997. The initial complaint in this matter was dated March 18, 1999 and served on the CT Page 9908 defendant on March 24, 1999. The allegations with respect to the 1994 behavior are barred by any applicable statute of limitations.[2] As a matter of law, an action for libel or slander must be brought within two years. C.G.S. § 52-597. An action for intentional infliction of emotional distress must be brought within three years. C.G.S. § 52-577. And a negligence claim must be brought within two years. C.G.S. §52-584. Thus, the defendant is entitled to judgment as a matter of law as to the plaintiff's claims regarding statements made in 1994.
The remainder of the plaintiff's claims relate to statements made by the defendant in 1997. In support of her motion, the defendant claims that her initial complaint, subsequent contacts, affidavit and testimony regarding the plaintiffs alleged improper behaviors were all protected utterances and statements because they were made in conjunction with a quasi-judicial proceeding. The gravamen of the plaintiff's objection is his claim that the arbitration is not a quasi-judicial proceeding and therefore the defendant's statements should not be afforded immunity. Additionally, he claims that the defendant's statements to Paul Slyman in 1997, though allegedly acting as an agent of the Division, were not part of the arbitration, and therefore, are not entitled to the protection of immunity even if her actual testimony at the arbitration hearing is afforded such protection.
It is well settled that statements made by witnesses in judicial proceedings are privileged. In Petyan v. Ellis, the Supreme Court opined:
 It has long been established that there is an absolute privilege for statements made in judicial proceedings. . . . There is a long standing common law rule that communications uttered or published in the course of judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject of the controversy. . . . The effect of an absolute privilege is that damages cannot be recovered for a defamatory statement even if it is published falsely and maliciously. . . . The policy underlying the privilege is that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements."
200 Conn. 243, 245-6 (1986). Additionally, the court stated:
"The common law absolute privilege itself is not confined to the testimony of a witness but extends to any statement made in the course of a judicial proceeding, whether or not given under oath, so long as it is pertinent to CT Page 9909 the controversy. . . . Thus it applies to statements made in pleadings or other documents prepared in connection with a court proceeding." Id. 251-52.
This policy is rooted in the notion that the participants to adjudication should be able to speak freely and openly bound only by the laws of evidence and perjury and without fear of recrimination for mistaken or erroneous testimony. As noted by the defendant in her brief, the basis of this policy is the belief that the public interest in having people speak freely in judicial proceedings outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements. Id. The privilege is not limited to statements made in testimony during an actual proceeding or in formal pleadings but extends to "any statements made as a requisite step in those proceedings, . . . so long as they are in some way pertinent to the subject of the controversy." Id. 246 citing with approval Circus CircusHotels Inc. v. Witherspoon, 99 Nev. 56, 61, 657 P.2d 101 (1983).
The testimonial privilege has been extended to quasi-judicial proceedings and to statements made in conjunction with such proceedings. In Petyan, the court stated:
 "The `judicial proceeding' to which the immunity attaches has not been defined very exactly. It includes any hearing before a tribunal which performs a judicial function, ex parte, or otherwise, and whether the hearing is public or not. It includes for example, lunacy, bankruptcy, or naturalization proceedings, and an election contest. It extends also to the proceedings of may administrative officers, such as boards and commissions, so far as they have powers of discretion in applying the law to the facts which are regarded as judicial or `quasi-judicial' in character."(citations omitted) This privilege extends to every step of the proceeding until final disposition. `Like the privilege which is generally applied to pertinent statements made in formal judicial proceedings, an absolute privilege also attaches to relevant statements made during administrative proceedings which are "quasi-judicial in nature.'" (Citations omitted) 200 Conn. 243, 246.
The defendant claims that the arbitration hearing relating to the plaintiff's employment status was a quasi-judicial proceeding and her discussions with Paul Slyman in advance of the hearing were in conjunction with it. In opposition, the plaintiff asserts that a CT Page 9910 grievance arbitration is not a quasi-judicial proceeding. He argues that since the authority of the arbitrator in grievance arbitration flows from contractual language and not directly from legislative enactment, there is no reason based in policy to accord testimonial immunity to arbitration witnesses. The court disagrees. As a matter of judicial and legislative policy, arbitration is favored as a method for resolving disputes and arbitration awards are given significant deference. Connecticut General Statutes § 52-408 provides, in part, that, "An agreement in any written contract, or in a separate writing executed by the parties to any written contract, to settle by arbitration any controversy thereafter arising out of such contract, or out of the failure or refusal to perform the whole or any part thereof . . . shall be valid, irrevocable and enforceable, except when there exists sufficient cause at law or in equity fort the avoidance of written contracts generally." Such an arbitration scheme was in place pursuant to the Agreement between the prosecutor's union and the plaintiff's employer. The Agreement contains a progressive grievance procedure leading to arbitration with the proviso that: "The arbitrator's decision shall be final and binding on the parties in accordance with Connecticut General Statutes § 52-418 provided, however, neither the submission of questions of arbitrability to any arbitrator in the first instance nor any voluntary submission shall be deemed to diminish the scope of judicial review over arbitral awards, including awards on competent jurisdiction to construe any such awards as contravening the public interests." Agreement, Article 8, Section 9.
In furtherance of the public policy to support arbitration, the scope of review of arbitration awards is limited. Thus, recently, Justice David Borden, writing for the Supreme Court, opined: "Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. (citations omitted)" Groton v. United Steelworkers ofAmerica, 254 Conn. 35, 44 (2000). Such a view is in accord with the legislative policy reflected in C.G.S. 52-418 regarding judicial review of arbitration awards. Pursuant to this statute, the court's authority to vacate an arbitration award is limited to circumstances in which the court finds that . . .
"the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause CT Page 9911 shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; of (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."
Thus, even though an arbitrator can not be said to be an officer of the state, when in the conduct of a grievance hearing, he or she is acting in furtherance of a stated public policy regarding the efficient resolution of private disputes. In acting pursuant to legislative sanction and within the powers limited to him by statute, the arbitrator manages a process of dispute resolution which has not only public approbation but affirmative support.
Assuming, arguendo, that a grievance arbitration hearing is a quasi-judicial proceeding, to deny testimonial immunity to witnesses in the arbitration hearing because the conduct of the hearing arises from a contractual commitment and the hearing officer is privately retained would render meaningless the court's avowed support and the legislative sanction accorded binding arbitration.
But to say that arbitration is a favored method for dispute resolution and that a grievance arbitrator acts with state sanction does not answer the question of whether an arbitration procedure constitutes a judicial process. It merely states that as a matter of public policy, arbitration is a protected and embraced procedure and one whose authority and eminence is not derived exclusively as a matter of private contract. It also supports the court's view that whether the arbitrator is, himself or herself, an employee of the State is immaterial to a consideration of whether the arbitration hearing can be characterized as quasi-judicial.
Whether or not a grievance arbitration hearing is a quasi-judicial procedure depends not upon the label of the process but upon the nature of the proceeding itself. In determining whether a proceeding is quasi-judicial, the Appellate Court in Field v. Kearns, stated: "The principal factors to be considered "are whether the body has the power to: (1) exercise judgment and discretion; (2) hear and determine or to ascertain facts and decide; (3) make binding orders and judgments; (4) affect the personal or property rights of private persons; (5) examine witnesses and hear the litigation of the issues on a hearing; and (6) enforce decisions or impose penalties." 43 Conn. App. 265 (1996), citingKelly v. Bonney, 221 Conn. 549, 567 (1992).
From a review of the Agreement and the arbitrator's award, the court CT Page 9912 concludes that the grievance arbitration relating to the plaintiff's employment was, in fact, a quasi-judicial proceeding. There is no factual dispute that the arbitrator heard evidence and received documentation, that he made factual determinations to which he applied the law, and that in finding that the plaintiff's employer had good cause to terminate his employment, the arbitrator affected the personal and property rights of the plaintiff. In all of its characteristics, this proceeding was judicial in nature. The defendant's testimony at the arbitration hearing is entitled to the protection of immunity.
Having determined that this grievance arbitration was a quasi-judicial proceeding, we now turn to the statements made in preparation for the hearing. Once it is determined that a proceeding is quasi-judicial in nature, the absolute privilege that is granted to statements made in furtherance of it "extends to every step in the proceeding until final disposition." Petyan at 246. The Supreme Court has determined that allegations made in a complaint in a quasi-judicial proceeding are absolutely privileged. DeLaurentis v. New Haven, 220 Conn. 225, 263
(1991); also see Kelley v. Bonney, 221 Conn. 549, 571 (1992). The plaintiff has made no claim that the statements made to Paul Slyman whom, the plaintiff alleges, was acting as an agent of his employer when the defendant met with him, were not made in conjunction with the arbitration process. The plaintiff was discharged in 1995. All other proceedings had terminated prior to 1997. It is apparent from the plaintiff's complaints and the affidavits provided by the defendant, which were uncontroverted by the plaintiff, that any statements made by the defendant in 1997 were related to the arbitration process. The plaintiff claims that these statements should not be afforded the protection of immunity because they were not made at the arbitration itself.
Even though the defendant's statements were not made directly to the adjudicative officer, her complaints to the plaintiff's employer, including the preparation of an affidavit, were a necessary predicate to the arbitration hearing. The initial complaint and subsequent written statements provided to the employer and utilized by the employer in its decision to discharge the plaintiff were a necessary and integral part of the arbitral process. It would be illogical to immunize the defendant for statements made during the arbitration hearing itself but not for statements made leading up to the hearing or in preparation for her testimony. Accordingly, the defendant's statements to Paul Slyman should also be accorded testimonial immunity.
For the reasons stated, the defendant's motion for summary judgment as to all counts is granted.
Bishop, J. CT Page 9913