**Arlis NEASON and Richard Neason, Plaintiffs,**

**v.**

**CLARK COUNTY, Nevada, a Political Subdivision of the State of Nevada; Sharon Coogan, Individually and as Investigator for Clark County Child Protective Services; Candice Bennett, Individually and as Supervisor for the Clark County Child Protective Services; Robert Teuton, Individually and as former Assistant Director of Clark County Child Protective Services; Robert Ranney, Individually and as Former Director of Clark County Child Protective Services; Carol Stillian, Individually and as Division Manager of Clark County Child Protective Services; Andrienne Cox, Individually and as Assistant Director of Clark County Child Protective Services; Cranford Crawford, Individually and as Assistant Director of Clark County Child Protective Services; Kirby Burgess, Individually and as Director of Clark County**

Child Protective Services; Marjorie Walker, Individually and as Social Welfare Program Specialist of State of Nevada Child & Family Services; Stephen Shaw, Individually and as former Administrator of State of Nevada Child & Family Services; Charlotte Crawford, Individually and as former Director of State of Nevada Child & Family Services; Edward Cotton, Individually and as Administrator of State of Nevada Child & Family Services; Michael Willden, Individually and as Director of State of Nevada Child & Family Services; City of Henderson (Henderson Police Department), a Political Subdivision of the State of Nevada; Nick Roble, Individually and as Detective for Henderson Police Department; Jackie Miller, Individually and as Detective for Henderson Police Department; Does 1 through 25, inclusive, Defendants.

No. CV–S–02–1110–PMP(PAL).

United States District Court,
D. Nevada.

Jan. 4, 2005.

Hamilton D. Moore, Boulder City, NV, for Plaintiffs.

Eva Garcia–Mendoza, Luther Snavely, Garcia–Mendoza & Snavely, Las Vegas, NV, for Defendants.

## ORDER

PRO, Chief Judge.

Presently before the Court is the Clark County Defendants' Motion for Summary Judgment (Doc. # 54), filed on April 26, 2004. Plaintiffs Arlis and Richard Neason filed Plaintiff's Opposition to Clark County Defendants' Motion for Summary Judgment (Doc. # 63) on July 12, 2004. Defendants filed a Reply (Doc. # 65) on August 11, 2004.

## I. BACKGROUND

Plaintiffs Arlis and Richard Neason are the parents of Jeffrey Neason. (Am. Compl. ¶ 4.) Since birth, Jeffrey has suffered from a variety of complex medical conditions which have resulted in chronic diarrhea and below average height and weight, among other ailments. (Pl.'s Opp'n to Clark County Defs.' Mot. Summ. J. ("Pl.'s Opp'n"), Ex. 17; Clark County Defs.' Mot. Summ. J. ("Mot.Summ. J."), Ex. 10 at 11–12.) Jeffrey has seen numerous doctors in several states for his conditions. (*Id.*, Exs. 17 & 28.) In 1992, Jeffrey's Nevada physician, Dr. Sharon Shaeffer, referred Jeffrey, then nine years old, to the UCLA medical center. (Pls.' Opp'n, Ex. 10 at 12–13.)

At the UCLA medical center, Jeffrey was seen by Dr. Martin Ament. (Mot. Summ. J., Ex. 10 at 13–14.) Dr. Ament performed tests on Jeffrey's stool specimens. (*Id.* at 14–21; Mot. Summ. J., Ex. 2 at 2.) One of those tests reacted positively to the presumptive presence of phenolphthalein, an ingredient in laxatives. (*Id.*)

Based on this test result, Dr. Ament concluded Jeffrey was being poisoned with laxatives causing his chronic diarrhea. (*Id.* at 3.) On February 26, 2002, Dr. Ament reported Jeffrey as a possible child abuse victim. (*Id.*) At some point it was suggested that Jeffrey was the victim of Munchausen syndrome by proxy. (Pls.' Opp'n, Ex. 28 at 1.) Munchausen syndrome by proxy is a psychological condition causing a parent to fabricate symptoms or create illness in a child to cause the child to be regarded as ill. (Michael Willden, Edward Cotton, Marjorie Walker and Stephen Shaw's Mot. Summ. J., Ex. 2 at 2; Pl.'s Opp'n, Ex. 5 at 33.)

Based on Dr. Ament's report of suspected child abuse, UCLA Police Department Detective Diane Huddleston placed a call to Sharon Coogan of the Clark County Child Protective Services ("CPS"), reported the test results, and informed her of the suspected child abuse. (Mot. Summ. J., Ex. 6 at 1–2.) Jeffrey thereafter was detained at UCLA medical center pending further investigation, although the record is less than clear under what state or entity's authority Jeffrey was so held.[1] (*Id.* at 2.)

On February 27, 1992, a report of child abuse or neglect was inputted into the State of Nevada's Child Abuse and Neglect System ("CANS") based on an input form filled out by Coogan. (Pl.'s Opp'n, Ex. 5, Vol. II at 57–60; Ex. 9.) Coogan concluded based on her fact finding inquiry that Jeffrey's case was a substantiated case of failure to thrive of unknown origin. (Pl.'s Opp'n, Ex. 5, Vol. II at 57–60.) Coogan did not attribute fault to the Neasons. *Id.* Despite this finding, Coogan filled out the CANS input form to indicate a finding of confirmed maltreatment. (*Id.* at 58–60; Ex. 9.) According to Coogan, she filled the form out in this manner to indicate a substantiated case of failure to thrive, but wrote in the "worker's comments" section of the CANS input form that this was a substantiated case of failure to thrive of unknown origin. (Pl.'s Opp'n, Ex. 5, Vol. II at 62–65.) The printed output from CANS does not reflect this notation, however, and instead states in the "worker comments" section: "MUNCHAUSEN SYNDROM BY PROXY." (Pl.'s Opp'n, Ex. 9.) Because the CANS input form indicated the case was a confirmed case of maltreatment, the Neasons names were entered on the State of Nevada's Central Registry, a subset of CANS reports that includes only substantiated cases of abuse and neglect. (Pl.'s Opp'n, Ex. 8 at 4.)

Illinois, the Neasons' state of permanent residence, eventually assumed jurisdiction over the case. (Mot. Summ. J., Ex. at 6 at 3.) Illinois also entered the Neasons into its registry of child abuse and neglect reports. (Pl.'s Opp'n, Ex. 5 at 50–52; Ex. 15.) Jeffrey remained at UCLA medical center until October 1992, when he was flown to Illinois and placed in the care of foster parents. (Mot. Summ. J., Ex. 1 at 32–33.) He remained in the foster parents' home until an Illinois court found

---

1. For example, Huddleston states that she "caused Jeffrey Neason to be admitted to UCLA Medical Center under a police hold ... under the authority of the Clark County, Nevada child welfare agency." (Mot. Summ. J., Ex. 2 at 2.) According to Coogan, however, Clark County CPS never placed a hold on Jeffrey, and could not have done so without notice and a hearing before a Nevada court within seventy-two hours. (Pl.'s Opp'n, Ex. 5 at 43–45.)

insufficient evidence of abuse or neglect, and returned Jeffrey to his parents on May 1, 1995. (Pl.'s Opp'n, Ex. 20.) Based on the court's findings, the Neasons had their name removed from the Illinois registry in 1997. (Pl.'s Opp'n, Ex. 23.)

In 1997, the Neasons wrote to Clark County CPS and inquired as to whether a case had been filed in Nevada regarding Jeffrey. (Pl.'s Opp'n, Ex. 25.) CPS responded that it had no record of a case being opened on Jeffrey. (Pl.'s Opp'n, Ex. 26.)

According to the Neasons, they thereafter sought several jobs in Nevada, but were consistently turned down. (Pl.'s Opp'n, Ex. 1 at 10–11, 69–74; Ex. 39 at 106, 115, 117.) Richard Neason testified that at least once he was assured he had the job pending a background investigation. (Pl.'s Opp'n, Ex. 1 at 69–74.) Richard Neason thereafter was denied the job. (*Id.*) Suspecting that their inability to find jobs in Nevada was linked to the former accusations against them, the Neasons asked the State of Nevada in August 2000 whether they were on Nevada's Central Registry. (Pl.'s Opp'n, Ex. 31.) After discovering their names were on Nevada's Central Registry, the Neasons requested their names be removed. (Pl.'s Opp'n, Ex. 29.) The State of Nevada expunged the Neasons' names from the Central Registry in the spring of 2001. (Pl.'s Opp'n, Ex. 33.)

The Neasons brought suit against Clark County and various Clark County employees associated with the investigation and CANS report, including Defendants Sharon Coogan ("Coogan"), Candice Bennett ("Bennett"), Robert Teuton ("Teuton"), Robert Ranney ("Ranney"), Carol Stillian ("Stillian"), Andrienne Cox ("Cox"), Cranford Crawford ("Crawford"), and Kirby Burgess ("Burgess") (collectively, the "Clark County Defendants"). The Neasons also sued several State employees associated with the State of Nevada Child & Family Services.

The Neasons bring three claims against the Clark County Defendants. First, they allege a state law claim for libel based on the Clark County Defendants allegedly publishing the Neasons' name on the Central Registry to the Las Vegas Metropolitan Police Department and to the Neasons' potential employers. (Am.Compl.¶¶ 30–34.) The Neasons' second claim arises under 42 U.S.C. § 1983 based on the Clark County Defendants' alleged failure to monitor the Illinois proceedings and expunge the Neasons' names from the Central Registry, and by disseminating the false allegations against the Neasons to potential employers even after the Neasons had been exonerated. (*Id.* ¶ 35–45.) Finally, the Neasons bring a claim under 42 U.S.C. § 1985(2) for conspiracy to obstruct the due course of justice. (*Id.* ¶¶ 46–56.) In this third claim, the Neasons allege the Clark County Defendants punished the Neasons without due process by placing their names on the Central Registry without any investigation or substantiation of the charges, and failed to remove their names when they were exonerated without any due process safeguards. (*Id.*)

The Clark County Defendants move for summary judgment, arguing Plaintiffs' libel claims fail because no evidence in the record supports the conclusion that the Clark County Defendants ever disseminated the Neasons' name on the list to any one other than the State of Nevada, and that would be a privileged communication. Additionally, Defendants contend Plaintiffs' § 1983 claim fails because the Clark County Defendants did not deprive the Neasons of life, liberty, or property without due process because there is no evidence the Neasons' were denied jobs due to their names being on the Registry. Defendants also argue Defendant Clark

County cannot be liable under § 1983 because it has no policy or custom regarding dissemination of information from the Registry; the State controls dissemination, not the county. Defendants Bennett, Teuton, Ranney, Stillian, Cox, Crawford and Burgess argue they are not liable under § 1983 because they had no personal participation in putting the Neasons' names on the Registry. The Clark County Defendants also argue that even if they violated Plaintiffs' constitutional rights, they are entitled to qualified immunity because Plaintiffs' rights were not clearly established. Finally, Defendants argue Plaintiffs fail to state a claim under § 1985(2) because Plaintiffs do not belong to a protected class.

Plaintiffs respond that they have provided inferential evidence that the State of Nevada and/or Clark County disseminated Central Registry information to employers conducting background checks. Plaintiffs contend that even if no evidence demonstrates dissemination to outside third parties, Clark County at least published the information to the State of Nevada once it inputted the CANS report. According to Plaintiffs, Defendant Clark County is liable on the § 1983 claim because it had a policy or custom of insufficient controls over the release of information from the Registry. Plaintiffs argue the individual Clark County Defendants are not entitled to qualified immunity because their statutory duties were clearly defined. Finally, Plaintiffs argue they are in the protected class of those falsely accused of committing child abuse.

## II. DISCUSSION

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" demonstrate "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law."

Fed.R.Civ.P. 56(c). The substantive law defines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All justifiable inferences must be viewed in the light most favorable to the non-moving party. *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir.2001).

The party moving for summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir.2000). The burden then shifts to the non-moving party to go beyond the pleadings and set forth specific facts demonstrating there is a genuine issue for trial. *Id.; Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

### A. Libel

Plaintiffs' first claim for relief against the Clark County Defendants asserts a libel claim, alleging Defendants disseminated the Neasons' names as substantiated child abusers to prospective employers, as well as for the Clark County Defendants reporting the Neasons as substantiated child abusers to the State of Nevada. Defendants move for summary judgment, arguing no evidence in the record establishes any third party received information on the Neasons from the Central Registry. Defendants also argue their report to the State of Nevada was privileged.

Nevada defines libel as "a malicious defamation, expressed by printing, writing, signs, pictures or the like, tending ... to impeach the honesty, integrity, virtue, or reputation, or to publish the natural defects of a living person or persons, ... and thereby to expose them to public hatred, contempt or ridicule." Nev.Rev.Stat. 200.510(1). Under Nevada law, to establish a defamation cause of action, the plain-

tiff must show: "(1) a false and defamatory statement by defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Wynn v. Smith,* 117 Nev. 6, 16 P.3d 424, 427 (2001). A publication is privileged " 'where a defamatory statement is made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or a duty, if it is made to a person with a corresponding interest or duty.' " *Lubin v. Kunin,* 117 Nev. 107, 17 P.3d 422, 428 (2001) (quoting *Circus Circus Hotels, Inc. v. Witherspoon,* 99 Nev. 56, 657 P.2d 101, 105 (1983)). Whether this "common interest" privilege applies is a question of law for the court. *Id.* If the court determines that the privilege applies, the plaintiff then bears the burden of proving the defendant "abused the privilege by publishing the communication with malice in fact." *Circus Circus Hotels, Inc.,* 657 P.2d at 105. Nevada defines "actual malice" as "that state of mind arising from hatred or ill will toward the plaintiff and does not include that state of mind occasioned by a good faith belief in the truth of the publication or broadcast." Nev.Rev.Stat. 41.332.

No evidence in the record establishes that the Clark County Defendants released to anyone the fact that the Neasons were on the Central Registry except to the State of Nevada, which released it to the Neasons themselves. A record search of requests for information on the Neasons showed that only the Neasons requested information about their status on the Central Registry. (Mot. Summ. J., Ex. 15 at 64–76.) Lina Gutierrez, deposed as both the records custodian and person most knowledgeable from Clark County School District ("CCSD"), one of the places Richard Neason applied, confirmed that CCSD does not request information from the Central Registry in making employment determinations. (Mot. Summ. J., Ex. 14 at 11, 27, 90–91.)

Despite this lack of evidence, Plaintiffs contend that it is "preposterous" that CCSD would not check to ensure its potential employees are not listed as substantiated child abusers. (Pls.' Opp'n at 12.) Plaintiffs also note that they were denied employment after employers stated they would perform a background check. (Pl.'s Opp'n, Ex. 1 at 10–11, 69–74; Ex. 39 at 106, 115, 117.) Finally, Plaintiffs offer the affidavits of Arlis Neason and Mari–Jo Casey which describe purported conversations between Neason and Monica Coleman, a former state employee in the Division of Child and Family Services.

According to Arlis Neason's affidavit, in September 2000, Arlis spoke with Monica Coleman regarding whether the Neasons' names were on the Central Registry. (Pl.'s Opp'n, Ex. 32 ¶¶ 2–3.) Arlis states that Coleman told her that the reason Richard Neason did not get a job as a teacher definitely was due to his name being on the Central Registry. (*Id.* ¶ 6.) Arlis avers that Coleman told her that all businesses that deal with children, including educators and day care providers, were supposed to check the Central Registry before hiring potential employees. (*Id.* ¶ 7.) According to the affidavit, Coleman also told Arlis that casinos and other businesses requiring work cards or sheriff's cards were supposed to check the Central Registry. (*Id.* ¶ 8.) Arlis avers that Coleman stated she was aware of numerous requests from various employers for Central Registry information on potential employees. (*Id.* ¶ 9.)

Plaintiffs also offer the affidavit of Mari–Jo M. Casey, a paralegal employed by Plaintiffs' counsel. (Pl.'s Opp'n, Ex. 37.) Casey states that she talked to Coleman in June 2004 and read to Coleman statements Coleman allegedly made to Arlis Neason

as detailed in Arlis' affidavit. (*Id.* ¶ 3.) According to Casey, Coleman confirmed the statements as accurate statements she made to Arlis in September 2000. (*Id.* ¶ 4.) Casey also avers that Coleman stated that Coleman personally was aware during her employment at the State of Nevada Division of Child and Family Services of "providing information concerning individuals listed on the Central Registry to day care centers, school officials and casinos on a regular basis." (*Id.* ¶ 7.)

The Clark County Defendants provide an affidavit from Coleman. (Reply to Pls.' Opp'n to Defs. Willden, Cotton, Walker and Shaw's Mot. for Summ. J., Ex. 1.) Coleman states that while employed at the State of Nevada, she "did not know who was allowed to access the information in the [Central] Registry, other than a general knowledge that certain entities that were identified by statute could access the information by submitting a request . . . ." (*Id.* ¶ 4.) Coleman also states that she is not aware of any potential employers who received information regarding the Neasons' name on the Central Registry, and that she does not know why CCSD did not hire Richard. (*Id.* ¶¶ 6–7.) Coleman further states that she does not recall telling Arlis that she was aware of numerous requests from businesses seeking information from the Central Registry, and she does not believe she would have made such a statement because she did not process requests for Central Registry information. (*Id.* ¶ 7.) Finally, Coleman denies she confirmed her alleged statements to Casey. (*Id.* ¶¶ 10–11.) According to Coleman, when Casey called, Coleman informed Casey she wanted to speak with the Nevada Attorney General's Office prior to discussing the matter further, and the conversation ended. (*Id.* ¶ 11.)

■ Coleman's alleged statements in the Arlis Neason and Casey affidavits are inadmissible against the Clark County De-

fendants as hearsay. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). Hearsay is not admissible absent an applicable exception. Fed.R.Evid. 802. Under Federal Rule of Evidence 801(d)(2)(D), statements are admissions, and therefore nonhearsay, if the statement is offered against a party and is "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the employment relationship." Fed. R.Evid. 801(d)(2)(D). Coleman was an agent of the State of Nevada and made the alleged statements to Arlis Neason during the course and scope of that agency relationship. But the State of Nevada is not a defendant in this action. Plaintiff has not provided any evidence to suggest Coleman was the agent or servant of any of the Clark County Defendants.

Even if Coleman's statements in the affidavits were admissible for the truth of the matter asserted, Plaintiffs have not raised a genuine issue of material fact regarding publication with respect to the Clark County Defendants. Coleman's statements refer only to the State agency disseminating information to third party employers, not Clark County or its employees.

■ Additionally, Clark County's reporting of the information to the State of Nevada was a privileged publication under the common interest privilege. The Clark County Defendants had a statutory duty to report to the State of Nevada child abuse investigations, including the demographic information on the allegedly abused or neglected child, his parents or other responsible party, the facts of the alleged abuse, and the disposition of the case. *See* Nev. Rev.Stat. 432B.310. Plaintiffs have offered

no evidence from which a reasonable juror could find any of the Clark County Defendants communicated the CANS report on the Neasons to the State of Nevada with malice in fact.

Absent any evidence that the Clark County Defendants disseminated without privilege the Neasons' names from the Central Registry, Plaintiffs do not raise a genuine issue of material fact for their libel claims. Accordingly, the Court will grant the Clark County Defendants' Motion for Summary Judgment on Plaintiffs' libel claim.

### B.  42 U.S.C. § 1983

Plaintiffs' second cause of action alleges Defendants violated 42 U.S.C. § 1983. According to Plaintiffs, the Clark County Defendants inputted their names into the Central Registry without adequate investigation, failed to monitor the Illinois proceedings and expunge the Neasons' names from the Central Registry, and disseminated the false allegations against the Neasons to potential employers even after the Neasons had been exonerated. (Am. Compl.¶ 35–45.) Defendants contend Plaintiffs' § 1983 claim fails because the Clark County Defendants did not deprive the Neasons of life, liberty, or property without due process where there is no evidence the Neasons' were denied jobs because their names were on the Registry. Defendants also argue Defendant Clark County cannot be liable under § 1983 because it has no policy or custom regarding dissemination of Registry information. Defendants Bennett, Teuton, Ranney, Stillian, Cox, Crawford and Burgess argue they are not liable under § 1983 because they had no personal participation in the alleged constitutional deprivation. The Clark County Defendants also argue that even if they violated Plaintiffs' constitutional rights, they are entitled to qualified immunity.

Plaintiffs respond that they have provided inferential evidence that the State of Nevada and/or Clark County disseminated Central Registry information to employers conducting background checks. Plaintiffs contend that even if no evidence demonstrates dissemination to outside third parties, Clark County at least published the information to the State of Nevada once it inputted the CANS report. According to Plaintiffs, Defendant Clark County is liable on the § 1983 claim because it had a policy or custom of insufficient controls over the release of information from the Registry. Plaintiffs argue the individual Clark County Defendants are not entitled to qualified immunity because their statutory duties were clearly defined.

■■■■ "To state a claim under § 1983, the plaintiff must allege a violation of his constitutional rights and show that the defendant's actions were taken under color of state law." *Gritchen v. Collier*, 254 F.3d 807, 812 (9th Cir.2001). Here, Plaintiffs allege a due process violation. The Fourteenth Amendment protects individuals against the governmental deprivation of life, liberty, or property without due process. *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir.1993). To establish a procedural due process claim under section 1983, a plaintiff must show: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." *Id.* The Due Process Clause does not create substantive rights in life, liberty, or property; those rights are determined by some external source, such as state law. *Id.*

■■■ Plaintiffs claim their reputations were damaged and they were turned down for prospective jobs based on their names being on the Registry, and that this constituted a deprivation of a protected property or liberty interest without due process of

law. To possess a property interest, an individual "must have more than an abstract need or desire for it or a unilateral expectation of it. Rather, he must possess a legitimate claim of entitlement to it." ▮▮▮▮ *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.,* 149 F.3d 971, 982 (9th Cir.1998) (quotations omitted). Damage to reputation alone is not a liberty or property interest protected by the Constitution. *See WMX Tech., Inc. v. Miller* 197 F.3d 367, 373 (9th Cir.1999) (citing *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) and *Siegert v. Gilley,* 500 U.S. 226, 233–34, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)). Consequently, to establish a section 1983 claim, the alleged defamation which causes reputational damage must be accompanied by the loss or alteration of a right or status recognized by law before the Due Process Clause is implicated. *Partington v. Gedan,* 961 F.2d 852, 860–61 (9th Cir.1992); *Hyland v. Wonder,* 972 F.2d 1129, 1142 (9th Cir. 1992). This has become known as the "stigma plus" test for establishing deprivation of liberty based on governmental defamation. *See Ulrich v. City and County of San Francisco,* 308 F.3d 968, 981–82 (9th Cir.2002). Under this test, due process protections apply if:

> the state makes a charge against a plaintiff that might seriously damage his standing and associations in the community, and 1) the accuracy of the charge is contested, 2) there is some public disclosure of the charge, and 3) it is made in connection with the termination of employment or the alteration of some right or status recognized by state law.

*Wenger v. Monroe,* 282 F.3d 1068, 1074 (9th Cir.2002) (quoting *Llamas v. Butte Cmty. Coll. Dist.,* 238 F.3d 1123, 1129 (9th Cir.2001)).

▮▮▮▮ Plaintiffs fail to raise a genuine issue of material fact on their § 1983 claim against the Clark County Defendants because Plaintiffs have not established Defendants deprived them of a constitutionally protected property or liberty interest. Walmart, CCSD, and the other entities to which Plaintiffs applied had no duty or requirement to hire Plaintiffs, and Plaintiffs had no corresponding entitlement or right to those particular jobs or to a job with a particular employer.

Additionally, Plaintiffs have no constitutionally protected liberty interest in their reputations. Under the stigma-plus test, Plaintiffs contested the charge's accuracy and were successful in removing their names from the Registry. As discussed with respect to Plaintiffs' libel claims, there is no evidence of public disclosure, however. Even assuming there was some public disclosure of their names on the Registry, the alleged defamation was not made in connection with the termination of employment or the alteration of some right or status recognized by law. Accordingly, the Court will grant the State Defendants' Motion for Summary Judgment as to Plaintiffs' § 1983 claim.

### C. 42 U.S.C. § 1985

Plaintiffs bring a third claim for relief under 42 U.S.C. § 1985(2) for conspiracy to deny access to the courts. Plaintiffs contend that Defendants established and maintained the Central Registry naming individuals as substantiated child abusers without any court determination or adequate investigation, and without notifying the individual of this designation, and then disseminated that information without telling the individual or permitting them to challenge the dissemination. (Am. Compl.¶¶ 46–56.) Plaintiffs contend this resulted in them being punished for a crime for which they were never tried and convicted. (*Id.*) Defendants respond that Plaintiffs cannot state a claim under § 1985(2) because they are not a member of a protected class.

Title 42 U.S.C. § 1985(2) contains two causes of action.[2] "The first clause of section 1985(2) concerns conspiracy to obstruct justice in the federal courts, or to intimidate a party, witness or juror in connection therewith." *Bretz v. Kelman*, 773 F.2d 1026, 1027 n. 3 (9th Cir.1985). The second clause of § 1985(2) provides a cause of action:

> if two or more persons conspire for the purpose of impeding ... the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws ...

42 U.S.C. § 1985(2). To state a claim under § 1985(2)'s second clause, a plaintiff must allege he is a member of a class which suffers from invidious discrimination and the defendant's acts were motivated by animus towards that class. *Bretz*, 773 F.2d at 1028. In interpreting similar language in § 1985(3), the Ninth Circuit has stated that "the plaintiff must be a member of a class that requires special federal assistance in protecting its civil rights." *McCalden v. Cal. Library Ass'n*, 955 F.2d 1214, 1223 (9th Cir.1990) (holding that the class of "Holocaust revisionists" is not a class that fulfills § 1985(3)'s class-based animus requirement).

Plaintiffs do not state a claim under either clause of § 1985(2). Under the first clause, Plaintiffs do not identify any federal proceeding connected to this case.

Under the second clause, Plaintiffs do not belong to a class which suffers from invidious discrimination, and Plaintiffs offer no evidence to support the conclusion that Defendants' acts were motivated by animus towards a certain class.

Plaintiffs contend they belong to the class of persons accused of child abuse. Persons accused of child abuse have not been recognized as a suspect class suffering from invidious discrimination by the United States Supreme Court or the United States Court of Appeals for the Ninth Circuit. Plaintiffs have not identified any court that has so held, or any Congressional action that has attempted to extend federal protection to this class. Persons accused of child abuse historically have not needed special federal assistance in the protection of their rights. Additionally, Plaintiffs have offered no evidence that Defendants' alleged conduct was motivated by discriminatory animus towards persons accused of child abuse, rather than legitimate state concerns of protecting children from abuse or neglect and providing comprehensive family services. Accordingly, the Court will grant the Clark County Defendants' Motion for Summary Judgment as to Plaintiffs' claim under § 1985(2).

### D. Clark County Defendants in Their Official Capacities

The Complaint asserts claims against the Clark County Defendants in both their

---

2. Section 1985(2) provides a cause of action: If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws ...

individual and official capacities. (Am. Compl. at 1.) Defendants move to dismiss the claims against them in their official capacities because Clark County already is a named Defendant, and a county officer in his official capacity is the same as the county.

█ Official-capacity suits " 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' " *Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (quoting *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.; see also Hyland v. Wonder*, 117 F.3d 405, 414 (9th Cir.1997) (noting that real party in interest in an official capacity suit is the governmental entity).

█ Because Clark County is a named Defendant in this action, and has received notice and an opportunity to respond, the claims against the individual Defendants in their official capacities are the same as claims against Clark County. Because the Court will dismiss all claims against Clark County, those claims also are dismissed against the individual Clark County Defendants in their official capacities.

### E. Plaintiffs' Request for Continuance And/Or Rebuttable Presumption

Finally, Plaintiffs request a continuance in filing their opposition or, in the alternative, a rebuttable presumption that information in certain documents would be adverse to the Clark County Defendants if produced. Plaintiffs contend that Clark County has access to, but has refused to produce, a clearinghouse form, a summary statement of the charges against the Neasons, the investigative file, files regarding reporting and controls, a copy of the district attorney's file, "CEIT" records, and the input form completed by Coogan. Plaintiffs contend that if produced, these documents would establish there was no substantiated case of abuse against the Neasons, and that no procedures existed to control access to or expungement from CANS. Plaintiffs argue that if a continuance is not viable, the Court should presume the documents would establish no substantiated case of child abuse, and that the substantiated allegation was communicated maliciously to the State of Nevada. Defendants respond that this Court already has denied Plaintiffs the extension for discovery that they now seek, and a presumption is unwarranted.

On May 17, 2004, the parties entered into a stipulation extending the time for Plaintiffs to file their Opposition to the Clark County Defendants' Motion for Summary Judgment. (Stipulation and Order to Extend Deadline for Filing Opp'n and Reply to Clark County Defs.' Summ. J. Mot. (Doc. # 56).) The extension was based on Defendants State of Nevada and Clark County's failure to provide complete copies of certain policy and procedure manuals.[3] (*Id.* at 2.) The Stipulation does not mention the other documents Plaintiffs now claim Clark County has refused to produce.

---

**3.** According to the Stipulation, the State of Nevada failed to provide Plaintiffs a complete copy of the Child Protective Services Policy and Procedure Manual. Clark County failed to provide Plaintiffs complete copies of the Clark County Juvenile Court Services Child Protective Services Policy and Procedure Manual, and the Department of Human Resources Welfare Division Chapter VI, Child Abuse and Neglect System Social Services Systems Handbook.

After Plaintiffs received the completed manuals as requested in the Stipulation, Plaintiffs failed to file their Opposition on time. Instead, Plaintiffs sent a letter to Clark County contending they could not complete their Opposition to the Motion for Summary Judgment until Clark County produced the district attorney file, a "CEIT" record, an archived complete file, and two manual sections. (Clark County's Request to Attribute Failure of the Pls. to Timely File Opp'n to Clark County's Mot. Summ. J. as Consent to the Granting of Said Mot. Pursuant to LR 7–2(d) (Doc. # 58), Ex. 2.)

In response to Plaintiffs' letter and failure to file an opposition, Clark County moved the Court to consider Plaintiffs' failure to oppose as consent to granting Clark County's Motion for Summary Judgment. (Clark County's Request to Attribute Failure of the Pls. to Timely File Opp'n to Clark County's Mot. Summ. J. as Consent to the Granting of Said Mot. Pursuant to LR 7–2(d) (Doc. # 58).) Plaintiffs opposed the motion, claiming they needed the listed documents to fully respond to the Motion for Summary Judgment. (Notice of Pls.' Additional Time to File Opp'n to Clark County Defs.' Mot. Summ. J. Pursuant to Stipulation and Order (Doc. # 59).) The Court granted Plaintiffs an extension, "to the extent that Plaintiffs shall file a Response to Defendant Clark County's Motion for Summary Judgment" by July 12, 2004. (Order dated June 22, 2004 (Doc. # 61).)

■ This Court has already denied Plaintiffs an extension to file an opposition until after Defendant Clark County produced the requested documents. Plaintiffs have not explained why these documents were not produced during discovery or why Plaintiffs did not move to compel disclosure during the discovery period. Plaintiffs also did not notify the Court that they required these documents in the orig-inal Stipulation and Order extending time to oppose the Motion for Summary Judgment. The Court finds no cause to grant a continuance or to presume the documents would be adverse to Clark County.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Clark County Defendants' Motion for Summary Judgment (Doc. # 54) is hereby GRANTED. Plaintiffs' Complaint is dismissed with prejudice against Defendants Clark County, Sharon Coogan, Candice Bennett, Robert Teuton, Robert Ranney, Carol Stillian, Andrienne Cox, Cranford Crawford, and Kirby Burgess.

IT IS FURTHER ORDERED that Plaintiffs' request for a continuance, or, in the alternative, for a rebuttable presumption is hereby DENIED.