STEPHEN A. WYNN, APPELLANT, *v.*
JOHN L. SMITH, RESPONDENT.

No. 31063

JOHN L. SMITH, APPELLANT, *v.* STEPHEN A.
WYNN, RESPONDENT.

No. 31220

BARRICADE BOOKS, INC., LYLE STUART, APPELLANTS, *v.*
STEPHEN A. WYNN, RESPONDENT.

No. 31221

January 29, 2001                                    16 P.3d 424

[Rehearing denied September 18, 2001]

*Schreck Morris* and *James J. Pisanelli* and *Todd L. Bice*, Las Vegas; *Stroock & Stroock & Lavan, LLP*, and *Barry B. Langberg* and *Deborah Drooz*, Los Angeles, California, for Stephen A. Wynn.

*JoNell Thomas*, Las Vegas, for John L. Smith, Barricade Books, Inc., and Lyle Stuart.

*Deutsch Klagsbrun & Blasband,* New York, New York, for Barricade Books, Inc., and Lyle Stuart.

*Allen Lichtenstein,* Las Vegas; *Davis, Wright, Tremaine* and *Laura Handman*, Washington, D.C., for Amicus Curiae.

## OPINION

*Per Curiam:*

Stephen A. Wynn is a well-known public figure in Nevada. Wynn filed an action for defamation against John L. Smith, Barricade Books, Inc., and Barricade's principal, Lyle Stuart, based upon statements made in an advertisement for Smith's unauthorized biography of Wynn. The district court awarded Smith summary judgment, and the matter proceeded to trial against the remaining defendants. The district court then entered judgment on a jury verdict in favor of Wynn and against Stuart and Barricade Books for compensatory and punitive damages totaling $3,173,000.00.[1]

Wynn appeals from the summary judgment entered in favor of Smith. Smith appeals from the district court's order denying him

---

[1]The district court also awarded Wynn costs in the amount of $166,096.74. Thus, the total award in favor of Wynn was $3,339,096.74.

attorney fees. Stuart and Barricade appeal from the judgment entered upon the jury verdict. We conclude the district court did not err by dismissing the case against Smith on summary judgment, since Smith did not participate in the advertisement's publication, and did not abuse its discretion by denying Smith's request for attorney fees. We conclude the district court did err, however, by giving the jury an inaccurate instruction on actual malice, which requires reversal of the judgment against Barricade and Stuart.

## FACTS

*Running Scared: The Life and Treacherous Times of Las Vegas Casino King Steve Wynn* was written by Smith and was scheduled for publication by Stuart and Barricade. In anticipation of this event, Stuart and Barricade announced the book in a trade catalog advertisement. The announcement contained several sensational statements about Wynn. Among these statements, the advertisement declared that Smith's book "details why a confidential Scotland Yard report called Wynn a front man for the Genovese family." The "Genovese Family" is a reputed organized criminal enterprise allegedly based in New York City.

Wynn sued Smith, Stuart, and Barricade, claiming the statements in the advertisement linking him to organized crime were libelous. Smith moved for summary judgment. He argued that the facts demonstrated he had not participated in the writing or publication of the advertisement and, as a matter of law, could not be held liable for the statements contained therein. In this, he argued that the entire extent of his involvement with the advertisement was his hope that the book would be advertised and his act of sending Stuart supporting materials for the manuscript that was developed into the book, including the report about Wynn from Scotland Yard. The district court agreed and granted Smith's motion. Smith then moved to recover attorney fees and costs. The district court denied that motion.

The case against Stuart and Barricade proceeded to trial. A district court jury found that the statement describing Wynn as a "front man" for the Genovese family was libelous and, as noted, awarded Wynn substantial compensatory and punitive damages.

## DISCUSSION

To establish a prima facie case of defamation, a plaintiff must prove: (1) a false and defamatory statement by defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages. *See Chowdhry v. NLVH, Inc.,* 109 Nev.

478, 483, 851 P.2d 459, 462 (1993). Under the rule established in *New York Times Co. v. Sullivan,* 376 U.S. 254, 279-80 (1964), a media defendant may not be held liable for damages in a defamation action involving a public official plaintiff unless ''actual malice'' is pleaded and proven. This rule was extended to public figure plaintiffs, such as Wynn, in *Curtis Publishing Company v. Butts,* 388 U.S. 130 (1967).

> Libel, in turn, is defined by Nevada statute as

> a malicious defamation, expressed by printing, writing, signs, pictures or the like, tending to blacken the memory of the dead, or to impeach the honesty, integrity, virtue, or reputation, or to publish the natural defects of a living person or persons, or community of persons, or association of persons, and thereby to expose them to public hatred, contempt or ridicule.

NRS 200.510(1). The statute further provides that ''[e]very person, *whether the writer or publisher,* convicted of the offense is guilty of a gross misdemeanor.'' NRS 200.510(2) (emphasis added).

### Claim of liability as to Smith

We first address Wynn's contention that the district court improperly granted summary judgment to Smith. This court reviews orders of summary judgment de novo. *See Bulbman, Inc. v. Nevada Bell,* 108 Nev. 105, 110, 825 P.2d 588, 591 (1992). Summary judgment is appropriate where ''there is no genuine issue as to any material fact.'' NRCP 56(c).

Wynn does not challenge the district court's factual findings. He concedes that Smith took no part in the drafting or publication of the advertisement. Wynn disputes, however, the district court's determination that Smith was not liable for Barricade's defamatory statement as a matter of law because he did not publish the advertisement. He urges this court to hold instead that a source of a defamatory statement may be held liable for that statement when the statement has been published and the source intended that the statement be published. In support of his proposed rule, Wynn cites *Mitchell v. Superior Court,* 690 P.2d 625 (Cal. 1984).

In *Mitchell,* the California Supreme Court concluded that, in civil actions for libel, a news reporter has a qualified privilege (a ''reporter's privilege'') to withhold disclosure of the identity of confidential sources or information obtained from those sources. *Id.* at 632. In considering the scope of this privilege, the California court observed via obiter dictum that ''if a source act-

ing with actual malice furnishes defamatory material to a publisher with the expectation that the material (either verbatim or in substance) will be published, the source should be liable for the publication." *Id.* at 633. The court further explained that the "rationale for making the originator of the defamatory statement liable for its foreseeable republication was the strong causal link between the actions of the originator and the damage caused by republication." *Id.* (quoting *McKinney v. County of Santa Clara,* 168 Cal. Rptr. 89, 94 (1980)).

We decline to adopt the *Mitchell* dictum in this instance. Here, Smith provided Stuart and Barricade a manuscript accompanied by his own investigatory documents, including the Scotland Yard Report. The language in the report to which the advertisement referred was that:

> The strong inference which can be drawn from the new intelligence is that Stephen WYNN, the President of GNI [Golden Nugget Incorporated], has been operating under the aegis of the Genovese family since he first went to Las Vegas in the 1960's to become a stockholder in the New Frontier Casino.

> It must be said that some of the data supporting this view, taken on its own, is not conclusive. However, the connections are so numerous and significant that it would be impossible to accept coincidence as a reasonable explanation.[2]

(Footnote added.)

These statements are much more qualified and couched in statements of investigative opinion than the ultimate phraseology that marks the advertisement published by Barricade. It was Barricade that recast the subject of the report into a representation of the contents that is arguably factual rather than mere opinion. *See* discussion *infra*.

Accordingly, we affirm the district court and hold that Smith may not be held liable for defamation for a statement that he did not write, edit, print, distribute or otherwise publish. Because we affirm the district court's summary judgment in favor of Smith for the reasons stated above, we need not address Smith's alternative arguments.

*Smith's claim for attorney fees*

We now review whether the district court correctly denied Smith's request for attorney fees. Smith's application for fees was

---

[2]The report then details a number of purported instances that, according to its author, tended to support these conclusions.

premised on NRS 17.115 and NRCP 68, which allow an award of attorney fees and costs when a party fails to recover more than a tendered offer of judgment. The focus of Smith's argument is not that the district court failed to consider his request under the *Beattie* factors, but that it reached the wrong conclusion under those factors.

Claims for attorney fees under NRS 17.115 and NRCP 68 are fact intensive. Thus, we will not disturb such awards in the absence of an abuse of discretion. *Uniroyal Goodrich Tire v. Mercer,* 111 Nev. 318, 324, 890 P.2d 785, 789 (1995) (citing *Schouweiler v. Yancey Co.,* 101 Nev. 827, 833, 712 P.2d 786, 790 (1985)). In exercising its discretion under NRCP 68, the district court must carefully evaluate the following factors: (1) whether the plaintiff's claim was brought in good faith; (2) whether the defendant's offer of judgment was reasonable and in good faith in both its timing and amount; (3) whether the plaintiff's decision to reject the offer and proceed to trial was grossly unreasonable or in bad faith; and (4) whether the fees sought by the offeror are reasonable and justified in amount. *Beattie v. Thomas,* 99 Nev. 579, 588-89, 688 P.2d 268, 274 (1983).

Although explicit findings with respect to these factors are preferred, the district court's failure to make explicit findings is not a per se abuse of discretion. *See Schwartz v. Estate of Greenspun,* 110 Nev. 1042, 1049, 881 P.2d 638, 642 (1994). If the record clearly reflects that the district court properly considered the *Beattie* factors, we will defer to its discretion. *Id.*

While the district court did not explicitly address each factor separately in its order, the parties do not dispute that the district court evaluated the request for attorney fees under the proper factors. The evaluation is reflected throughout the record on appeal, including the parties' moving papers and the district court's explanation of its order, to wit:

> [It could not] find that the plaintiff's Complaint against John L. Smith for the catalog ad was brought either in bad faith or had no merit. In fact, plaintiff could not determine John Smith's role in the advertisement for this book until after considerable discovery had taken place. Therefore, the Court declines to award John Smith any attorney fees in this action.

Because it considered each of the *Beattie* factors, we cannot

conclude that the district court's refusal to award attorney fees to Smith was an abuse of discretion.[3]

## Fair report privilege

Stuart and Barricade raise the next issue on appeal. They urge us to extend the fair report privilege, a doctrine we recognized in *Sahara Gaming v. Culinary Workers,* 115 Nev. 212, 984 P.2d 164 (1999), to the official proceeding at issue in this case (namely, the Scotland Yard investigation and report). We agree that the privilege should not be limited to judicial proceedings like those at issue in *Sahara Gaming.* It should apply to all public, official actions or proceedings. However, the Scotland Yard report at issue here does not involve such an official action or proceeding. We therefore refuse to apply the privilege in this case.

The fair report privilege is described in the Restatement (Second) of Torts § 611 (1965):

> The publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgment of the occurrence reported.

The fair report privilege is premised on the theory that members of the public have a manifest interest in observing and being made aware of public proceedings and actions. Access to information concerning the conduct of public representatives is critical to the citizenry's supervision and evaluation of actions taken on its behalf. Obviously unable to monitor all official acts in person, citizens rely on third party accounts of such actions. If accurate reports of official actions were subject to defamation actions, reporters would be wrongly discouraged from publishing accounts of public proceedings. However, comment "d" to section 611 of the Restatement (Second) of Torts provides that it is not clear whether the privilege extends to a report of an official proceeding that is not public or available to the public under law.

Stuart and Barricade both contend that the statement at issue— "[*Running Scared*] details why a confidential Scotland Yard report called Wynn a front man for the Genovese family"—is a protected statement under the fair report privilege. They argue that their

---

[3]Wynn also contends that the offer of judgment was invalid because it was conditional. Although Smith, Stuart, and Barricade's offers of judgment were presented on a single document, they were properly apportioned, and there was nothing on the face of the document to suggest that each offer was conditional upon the acceptance of the others. Accordingly, we find this contention to be without merit.

publication accurately reported the Scotland Yard official report, and, thus, was a privileged statement. This court has not before addressed the question of whether a report generally unavailable to the public, like the Scotland Yard report in this case, is ''a report of an official action or proceeding'' subject to the fair report privilege.

The United States Court of Appeals for the Third Circuit has addressed the issue. *Medico v. Time, Inc.,* 643 F.2d 134 (3d Cir. 1981), involved a libel suit brought against a news magazine that published a summary of an FBI report that identified a prominent political figure as a member of an organized crime family. The court held that the FBI files were ''official'' because government officials acting in their official capacities compiled them. *Id.* at 140. The court also concluded that the privilege applied to the reports based on the public's right to information, and the benefit conferred on the public by the FBI's resources to investigate matters of public concern, which individuals alone could not attain. *Id.* at 142. The court justified its ruling by emphasizing that an examination ''of the affairs of elected officials is obviously a matter of legitimate public concern.'' *Id.*

Eight years later, the Third Circuit questioned the reasoning of the *Medico* decision in *Schiavone Construction Co. v. Time, Inc.,* 847 F.2d 1069 (3d Cir. 1988). In *Schiavone,* the court observed that ''important countervailing policy considerations raise serious issues concerning the appropriate application of the privilege to confidential FBI investigation files.'' *Id.* at 1086. The purpose of the privilege, the court pointed out, is to encourage the accurate reporting of information already available to the public. *Id.* Allowing the privilege to cover confidential reports would bring to light information that the government had no intention of releasing, and which could be used as a powerful tool for injury. *Id.* at 1086 n.26. The court went on to note that *Medico,* a decision based upon Pennsylvania's fair report privilege, had been criticized as '' 'not in harmony with the mainstream of the common law.' '' *Id.* at 1086 (quoting F. Harper, F. James & O. Gray, *The Law of Torts* § 5.24 n.33 (2d ed. 1986)).

We agree with the court's reasoning in *Schiavone* and hold that unauthorized or confidential investigatory reports do not qualify as an ''official action or proceeding'' under the fair report privilege. The policies underlying the privilege are simply not served by the rule urged by Stuart and Barricade. The privilege is an exception to the common law rule that attaches liability for libel to a party who publishes a defamatory statement. *See Schiavone,* 847 F.2d at 1086 n.26. The purpose of this exception is to obvi-

ate any chilling effect on the reporting of statements already accessible to the public.

Here, the Scotland Yard report referenced in the statement at issue was not accessible to the public, nor did Scotland Yard itself ever recognize it as "official." The report was never sent to the British Gaming Control Board, which urged Scotland Yard to compile the report, and the report was archived for being substandard and unsubstantiated. Inclusion of such a report within the ambit of the fair report privilege would directly conflict with the protections provided by our libel laws, and would undermine the basis of the privilege itself. We conclude that this privilege should not be extended to allow the spread of common innuendo that is not afforded the protection accorded to official or judicial proceedings. Accordingly, we hold that the statement at issue is not subject to the protection afforded by the fair report privilege because the report was not official.

*The jury instruction regarding malice*

Stuart and Barricade contend that the jury was given an improper instruction on the issue of actual malice, a standard required by the U.S. Constitution when the subject of the alleged defamation is a public figure. *See New York Times Co. v. Sullivan,* 376 U.S. 254, 279-80 (1964).

Inaccuracies in jury instructions mandate reversal unless it can be shown that any errors were harmless. *See, e.g., Robey v. State,* 96 Nev. 459, 462, 611 P.2d 209, 211 (1980). Relevant Nevada case law holds that "[r]eckless disregard for the truth may be defined as a *high degree of awareness* of the probable falsity of a statement. It may be found where the defendant entertained *serious* doubts as to the truth of the statement, but published it anyway." *Posadas v. City of Reno,* 109 Nev. 448, 454, 851 P.2d 438, 443 (1993) (emphasis added). Further, in *Nevada Independent Broadcasting v. Allen,* 99 Nev. 404, 414, 664 P.2d 337, 344 (1983), we held that "[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication" (citing *St. Amant v. Thompson,* 390 U.S. 727, 731 (1968)); *see also Garrison v. Louisiana,* 379 U.S. 64, 74 (1964) (holding that only those false statements made with the high degree of awareness of their probable falsity demanded by *New York Times* may be the subject of either civil or criminal sanctions).

The court instructed the jury on malice as follows:

In this action, plaintiff must prove by clear and convincing

evidence that one or both defendants knew the communication was false or acted in reckless disregard of these matters. Clear and convincing evidence means evidence establishing every factual element to be highly probable or evidence which must be so clear as to leave no substantial doubt.

\* \* \* \*

Reckless disregard for the truth or falsity of a publication may be found where the publisher entertained doubt as to the veracity of an informant or the accuracy of a report and the defendant failed to make reasonable efforts to investigate. In determining whether the defendant(s) entertained a doubt as to the veracity of the information, you may consider whether there were obvious reasons to doubt.

The malice instruction in this case only required the jury to find that Barricade harbored "doubt," in opposition to "serious doubt," as a required predicate for finding recklessness, i.e., malice. Thus, the malice instruction did not sufficiently qualify the degree of doubt required for a finding of malice in accordance with *Posadas* and *Allen*. Rather, the omission of the critical language regarding degree of doubt emphasized above effectively reduced the standard of proof required to establish malice. Because the entire case against Stuart and Barricade hinged on a finding of actual malice, the erroneous malice instruction requires reversal of the district court's judgment and remand for a second trial as to Stuart and Barricade.

*Assertions of fact or opinion*

Stuart and Barricade contend that the statement at issue constituted non-actionable opinion. "As a general rule, only assertions of fact, not opinion, can be defamatory. However, expressions of opinion may suggest that the speaker knows certain facts to be true or may imply that facts exist which will be sufficient to render the message defamatory if false." *K-Mart Corporation v. Washington,* 109 Nev. 1180, 1192, 866 P.2d 274, 281 (1993) (citing *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 13 (1990)) (citation omitted).

The rule for distinguishing an opinion from an assertion of fact is whether a reasonable person would be likely to understand the remark as an expression of the source's opinion or as a statement of existing fact. *See Allen,* 99 Nev. at 410, 664 P.2d at 342.

Although ordinarily the fact-versus-opinion issue is a question of law for the court, where the statement is ambiguous, the issue must be left to the jury's determination. *Id.*

Here, the statement at issue in the advertisement is: "[the book] details why a confidential Scotland Yard report called Wynn a front man for the Genovese family." Barricade contends that the use of the term "why" in this representation, as a matter of law, constitutes a statement of opinion, not fact. We disagree. The statement in question is ambiguous on this point and, therefore, on remand, the question of whether it is an assertion of fact or opinion should be submitted for determination by the jury.

## CONCLUSION

The district court properly granted summary judgment to Smith, but did not abuse its discretion under *Beattie* in its refusal of Smith's application for attorney fees. We therefore affirm the district court's order granting summary judgment and denying attorney fees in Docket Nos. 31063 and 31220. We also conclude that the jury received improper instructions on the issue of malice in the trial against Stuart and Barricade. Accordingly, in Docket No. 31221, we reverse the district court's judgment and remand the matter for a new trial.[4]

BECKER, J., concurring:

I agree that the district court improperly instructed the jury on the issue of malice, using the standard set forth in *New York Times*[1] rather than the standard required by our holdings in *Posadas* and *Allen*.[2] I write separately to indicate my disagreement with the "serious doubt" standard for investigation created by these cases. In my opinion, the standard imposed by the United States Supreme Court in *New York Times* is the better rule of law.

---

[4]Stuart and Barricade also contend on appeal that the compensatory and punitive damage awards were excessive, and that Wynn's cost bill was unsubstantiated. In light of our resolution of other issues raised by the parties, these claims are rendered moot. We have considered the other claims of error asserted by Stuart and Barricade and find them to be without merit.

THE HONORABLE MYRON E. LEAVITT, Justice, voluntarily recused himself from participation in the decision of this matter.

[1]*New York Times Co. v. Sullivan,* 376 U.S. 254 (1964).

[2]*Posadas v. City of Reno,* 109 Nev. 448, 851 P.2d 438 (1993); *Nevada Independent Boadcasting v. Allen,* 99 Nev. 404, 664 P.2d 337 (1983).