136 Nev., Advance Opinion 70

IN THE SUPREME COURT OF THE STATE OF NEVADA

STEVE WYNN, AN INDIVIDUAL,
Appellant,
vs.
THE ASSOCIATED PRESS, A
FOREIGN CORPORATION; AND
REGINA GARCIA CANO, AN
INDIVIDUAL,
Respondents.

No. 77708

FILED

OCT 29 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _S. Young_
DEPUTY CLERK

Appeal from a district court order dismissing a defamation complaint. Eighth Judicial District Court, Clark County; Ronald J. Israel, Judge.

*Reversed and remanded with instructions.*

Pisanelli Bice, PLLC, and Todd L. Bice, Las Vegas; Peterson Baker, PLLC, and Tamara Beatty Peterson and Nikki L. Baker, Las Vegas,
for Appellant.

Ballard Spahr LLP and Chad R. Bowman and Jay Ward Brown, Washington, D.C.; Ballard Spahr LLP and Joel E. Tasca, Las Vegas,
for Respondents.

BEFORE THE COURT EN BANC.

20-39616

*OPINION*

By the Court, CADISH, J.:

This appeal arises out of a defamation claim brought by appellant Steve Wynn against respondents The Associated Press and one of its reporters. Respondents published a news article reporting on a 2018 citizen's complaint to the police in which the complainant alleged Wynn sexually assaulted her in 1973 or 1974. For statute of limitations reasons, police did not investigate the allegations and took no further law enforcement action. Wynn's defamation claim alleged that the complainant's accusations were false and that respondents published the article reporting on them with malice. The district court granted respondents' motion to dismiss, concluding that the fair report privilege applied as a defense, thereby shielding respondents from defamation liability.

In resolving Wynn's appeal, we must consider what qualifies as an official action or proceeding warranting application of the fair report privilege to one who reports on it. The fair report privilege shields a defendant from liability for publication of defamatory content in the course of reporting on official actions, official proceedings, or meetings open to the public regarding issues of public concern so long as it is a fair and accurate summary thereof. Here, the district court agreed with respondents that the fair report privilege protected respondents from defamation liability because their article reported on a public record, namely documentation of a citizen's complaint to the police alleging a crime occurred. We disagree that this citizen's complaint constitutes an official action or proceeding as contemplated by the fair report privilege. To hold that a law enforcement officer's mere transcription of a complainant's allegations, absent any

 

additional official action or proceeding, warrants application of the fair report privilege would be inconsistent with the underlying policies behind the privilege and would unnecessarily impinge on our defamation laws. Therefore, we hold that a news article reporting on the contents of a citizen's complaint to the police—which was neither investigated nor evaluated by the police—is not a report of an official action or proceeding for which the fair report privilege provides an absolute defense. Accordingly, we reverse the district court's dismissal and remand the matter for further proceedings.

## FACTS AND PROCEDURAL HISTORY

In February 2018, the Las Vegas Metropolitan Police Department (LVMPD) held a press conference informing the public that two women filed complaints alleging that Wynn sexually assaulted them. The *Las Vegas Review-Journal* published an article summarizing the press conference. After reading the article, respondent Regina Garcia Cano, a reporter for respondent The Associated Press (collectively AP Respondents) contacted the LVMPD to inquire about the complaints. The LVMPD sent a copy of an officially released email in response, stating two women alleged that Wynn sexually assaulted them in the 1970s. The email stated that one woman alleged that Wynn sexually assaulted her in Las Vegas, and the other woman alleged that Wynn sexually assaulted her in Chicago, Illinois. Finally, the email stated that the LVMPD would forward a copy of the Chicago allegations to Chicago law enforcement but would not investigate either allegation because the 20-year limitation period on criminal actions for sexual assault had expired.

Under the Nevada Public Records Act (NPRA), Garcia Cano requested copies of the citizens' complaints. The LVMPD provided copies of the complaints, both of which were partially redacted to exclude identifying

SUPREME COURT
OF
NEVADA

(0) 1947A

3

information about the complainants. Garcia Cano prepared an article about the allegations contained therein. The article stated that one of the citizens' complaints was by a woman who told officers that Wynn sexually assaulted her at least three times in her Chicago apartment between 1973 and 1974. The article further stated that the woman reported she became pregnant because of the alleged sexual assaults and gave birth in a gas station restroom. Finally, the article stated that the woman and her child now reside in Las Vegas. The Associated Press published the article.

Wynn filed a defamation complaint against AP Respondents, arguing that the Chicago allegations were false and improbable on their face, and that AP Respondents intentionally described the contents of the underlying report in an incomplete and unfair manner. AP Respondents moved for dismissal, arguing that the fair report privilege provided absolute immunity against Wynn's defamation claim because the article fairly reported the allegations contained in an official police report. Alternatively, AP Respondents argued for dismissal under Nevada's anti-SLAPP statute. In this regard, AP Respondents first contended that the article was a good-faith communication in furtherance of the right to free speech in direct connection with an issue of public concern. Second, they asserted that Wynn, as a public figure, could not meet his burden to establish a probability of prevailing on his defamation claim.

The parties stipulated to a bifurcated argument schedule to avoid unnecessary discovery. First, after briefing of the issue, the district court would determine whether the fair report privilege applied to the article. If the privilege did not apply, then there would be further proceedings to consider the application of the anti-SLAPP statute. After reviewing briefs on the application of the fair report privilege and hearing

argument by the parties, the district court concluded that the privilege applied to the article. Therefore, the district court dismissed Wynn's defamation complaint.[1] Wynn appeals, arguing that the district court erred by concluding that the fair report privilege applied to the article.

## DISCUSSION

When the district court considers matters outside the pleadings in resolving a motion to dismiss, it effectively treats the motion as one for summary judgment and must apply the summary judgment standard.[2] NRCP 12(d); *Mendenhall v. Tassinari*, 133 Nev. 614, 617, 403 P.3d 364, 368 (2017). We review a district court's decision to grant summary judgment de novo. *Sahara Gaming Corp. v. Culinary Workers Union Local 266*, 115 Nev. 212, 214, 984 P.2d 164, 165 (1999).

### The fair report privilege

The issue before this court is whether an article reporting on a citizen's complaint to law enforcement that did not trigger an investigation or further police action constitutes a report of an official action or proceeding that is protected by the fair report privilege. Under the fair report privilege, "[t]he publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and

---

[1]In dismissing Wynn's defamation complaint, the district court order stated the legal standard under Nevada's anti-SLAPP statute. However, per the parties' stipulation, Wynn's brief only addressed the application of the fair report privilege, and the court's analysis and ruling only addressed this privilege, not the burdens of the anti-SLAPP framework. Thus, although the district court titled its decision an order granting a special motion to dismiss, the district court, in effect, rendered summary judgment.

[2]Here, the district court considered an affidavit as well as various newspaper articles in rendering its decision.

 

complete or a fair abridgement of the occurrence reported." Restatement (Second) of Torts § 611 (Am. Law Inst. 1977). The privilege is an exception to the general rule that "one who repeats or otherwise republishes defamatory matter is subject to liability as if he had originally published it." Restatement (Second) of Torts § 578; *see Wynn v. Smith*, 117 Nev. 6, 15, 16 P.3d 424, 430 (2001).

We have recognized the fair report privilege since at least 1880. *See Thompson v. Powning*, 15 Nev. 195, 203 (1880) (holding that the publication of a "fair, full, and true report of judicial proceedings, except upon actual proof or [sic] malice in making the report" is privileged "unless the proceedings are of an immoral, blasphemous, or indecent character, or accompanied with defamatory observations or comments"). Although the fair report privilege originally applied only to reports of statements made during judicial proceedings, courts, including our own, over time have expanded its scope to encompass reports about a variety of official actions beyond judicial proceedings.[3] Our expansion of the fair report privilege is consistent with the privilege's underlying policy. Specifically,

---

[3]Since *Thompson*, we have abandoned exceptions to the fair report privilege for proceedings involving immorality, blasphemy, or indecency, as well as for statements made with knowledge of falsity or malice. *Nickovich v. Mollart*, 51 Nev. 306, 313, 274 P. 809, 810 (1929) (holding that defamatory matter published from a judicial proceeding is privileged if the witness statements "are relevant and pertinent" to the controversy, "whether or not they are false or malicious"); *Circus Circus Hotels, Inc. v. Witherspoon*, 99 Nev. 56, 60, 657 P.2d 101, 104 (1983) (holding that "[t]he [fair report] privilege precludes liability" for communications "published in the course of judicial proceedings" even if "the defamatory statements are published with knowledge of their falsity and personal ill will toward the plaintiff"); *Sahara Gaming Corp.*, 115 Nev. at 215, 984 P.2d at 166 (extending the fair report privilege "to any person who makes a republication of a judicial proceeding

[t]he fair report privilege is premised on the theory that members of the public have a manifest interest in observing and being made aware of *public proceedings and actions*. Access to information concerning the conduct of public representatives is critical to the *citizenry's supervision and evaluation of actions taken on its behalf*. Obviously unable to monitor all official acts in person, citizens rely on third party accounts of such actions. If accurate reports of official actions were subject to defamation actions, reporters would be wrongly discouraged from publishing accounts of public proceedings.

*Wynn*, 117 Nev. at 14, 16 P.3d at 429 (emphases added).

Although those policy considerations favor applying the fair report privilege to reports of official actions and statements beyond judicial proceedings, we are mindful that the privilege's scope remains limited by competing societal interests. We recognized such a limitation in declining to apply the fair report privilege to a publication concerning unauthorized or confidential investigatory reports by law enforcement that were generally unavailable to the public, because applying it to such reports would "conflict with the protections provided by our libel laws" and could facilitate "the spread of common innuendo." *Id.* at 16, 16 P.3d at 430. Thus, while courts recognize that enabling the press to "report freely on public affairs 'requires that we protect some falsehood in order to protect speech that matters,'" they also recognize that "defamatory statements impede society's interest in preserving each individual's right to privacy and freedom from defamation." *Butcher v. Univ. of Mass.*, 136 N.E.3d 719, 729

---

from material that is available to the general public"); *Wynn*, 117 Nev. at 14, 16 P.3d at 429 (holding that the fair report privilege extends "to all public, official actions or proceedings" and is not limited to judicial proceedings).

(Mass. 2019) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 341 (1974)). We keep these competing interests in mind as we evaluate the report here.

*The article reporting on the complainant's allegations is not a report of an official action or proceeding*

Relying upon the Restatement (Second) of Torts section 611 and authority from other jurisdictions, Wynn argues that the fair report privilege does not apply to AP Respondents' article because it described a citizen's complaint that merely recorded the complainant's allegations without any further action, which does not qualify as a report of an official action or proceeding.[4] We agree for the reasons set forth below.

*The citizen's complaint was not an official report*

First, we address whether the filing of a report documenting the complainant's allegations to police constitutes an official action under the fair report privilege. Comment d to the Restatement (Second) of Torts section 611 states, in relevant part, that "[t]he filing of a report by an officer or agency of the government is an action bringing a reporting of the governmental report within the scope of the privilege." AP Respondents contend that the citizen's complaint falls within the privilege under section 611, comment d because a law enforcement officer filed the report

---

[4]Wynn also argues that the breadth of the fair report privilege and of the judicial proceedings privilege are identical. The judicial proceedings privilege grants immunity from defamation claims to participants in judicial or quasi-judicial proceedings. *Jacobs v. Adelson*, 130 Nev. 408, 412, 325 P.3d 1282, 1285 (2014). The purpose behind the judicial proceedings privilege is to promote society's "interest in having people speak freely" on matters related to the underlying judicial or quasi-judicial proceeding. *Circus Circus Hotels*, 99 Nev. at 61, 657 P.2d at 104. Because the judicial proceedings privilege protects different actors and promotes different interests than the fair report privilege, we decline to apply our judicial proceedings privilege jurisprudence to resolve the instant appeal.

SUPREME COURT
OF
NEVADA

(O) 1947A

documenting it. However, AP Respondents' reliance on section 611, comment d is misplaced. We note that the authorities cited in support of section 611, comment d suggest that governmental reports within the meaning of this comment are reports that are drafted and filed by executive or administrative officers, not reports that are made by private citizens and given to law enforcement.[5] Furthermore, AP Respondents do not point to, nor did our research reveal, any relevant caselaw where a common law fair report privilege jurisdiction applied the privilege to a citizen's complaint of an alleged crime absent any further official action by law enforcement.[6]

---

[5]*See Time, Inc. v. Pape*, 401 U.S. 279, 292 (1971) (analyzing a Civil Rights Commission report under Illinois' fair report privilege); *Brandon v. Gazette Publ'g Co.*, 352 S.W.2d 92, 94-95 (Ark. 1961) (holding that a report about an official investigation ordered by the governor is subject to the fair report privilege); *Begley v. Louisville Times Co.*, 115 S.W.2d 345, 351 (Ky. 1938) (holding that a report drafted by the adjutant general and submitted to the governor is subject to the fair report privilege); *Conner v. Standard Publ'g Co.*, 67 N.E. 596, 598 (Mass. 1903) (holding that a report containing the findings of the fire marshal is subject to the fair report privilege); *Briarcliff Lodge Hotel, Inc. v. Citizen-Sentinel Publishers, Inc.*, 183 N.E. 193, 197-98 (N.Y. 1932) (holding that a water board's demand letter is subject to the fair report privilege); *Painter v. E. W. Scripps Co.*, 148 N.E.2d 503, 506-07 (Ohio Ct. App. 1957) (holding that a coroner's order is subject to the fair report privilege).

[6]*See White v. Fraternal Order of Police*, 909 F.2d 512, 514 (D.C. Cir. 1990) (involving complaints regarding deviations from a law enforcement drug-testing program and subsequent investigation); *Wilson v. Birmingham Post Co.*, 482 So. 2d 1209, 1210 (Ala. 1986) (involving police interrogations in the course of an investigation contained within an incident report); *Solaia Tech., LLC v. Specialty Publ'g Co.*, 852 N.E.2d 825, 844 (Ill. 2006) (involving a filed anti-trust complaint); *Thomas v. Tel. Publ'g Co.*, 929 A.2d 993, 1006 (N.H. 2007) (involving a presentence investigation report); *Salzano v. N. Jersey Media Grp. Inc.*, 993 A.2d 778, 791-92 (N.J. 2010) (involving a civil complaint filed in bankruptcy); *Trainor v. Standard Times*, 924 A.2d 766, 768 (R.I. 2007) (involving a police report detailing the arrest of a citizen).

The Restatement (Second) of Torts section 611, comment h is also instructive, providing, in pertinent part, that

> [a]n arrest by an officer is an official action, and a report of the fact of the arrest or of the charge of crime made by the officer in making or returning the arrest is therefore within the conditional privilege . . . . On the other hand statements made . . . by the complainant . . . as to the facts of the case . . . are not yet part of the judicial proceeding or of the arrest itself and are not privileged . . . .

Here, the LVMPD did not make an arrest based on this complaint. However, even if it had, section 611, comment h suggests that the citizen's complaint would still not fall within the fair report privilege because it is simply the complainant's statement about the facts of the case rather than an official action or proceeding such as an arrest or the bringing of charges.

Finally, we note that extending the fair report privilege to a citizen's complaint, absent any official action by law enforcement, would not further the underlying policy behind the privilege. As stated above, the fair report privilege is designed to promote citizen supervision and oversight of government action. Here, the LVMPD did not take any action on the citizen's complaint because the limitation period for the alleged sexual assault expired. Therefore, there was no government action for the citizenry to evaluate. Accordingly, we hold that a law enforcement officer's mere transcription and filing of a complainant's allegations does not constitute an official action for purposes of applying the fair report privilege.[7]

---

[7]Other jurisdictions have followed a similar approach. *See Pittsburgh Courier Publ'g Co. v. Lubore*, 200 F.2d 355, 356 (D.C. Cir. 1952) (stating that "few if any courts would extend the [fair report] privilege so far as to

*The LVMPD's press conference and subsequent email did not bring AP Respondents' article reporting on the complainant's allegations within the fair report privilege*

There is no question that the LVMPD's press conference and subsequent email notifying the public that two women accused Wynn of sexual assault constituted an official action. *See Jones v. Taibbi*, 512 N.E.2d 260, 267 (Mass. 1987) (holding that the fair report privilege applies to descriptions of allegations made during a police press conference). Therefore, any reporting on the substance of the LVMPD press conference and official statements in the email is protected by the fair report privilege so long as the reporting is a fair, accurate, and impartial summary of the contents thereof. However, the LVMPD never disclosed any details about the allegations in its press conference or email. Therefore, we must determine whether the LVMPD's decision to inform the public about the existence of the allegation via a press conference and email was sufficient for the fair reporting privilege to protect the AP Respondents' article reporting on the specific allegations in the underlying complaint.

In *Lewis v. NewsChannel 5 Network, L.P.*, the Tennessee appellate court addressed a similar question. 238 S.W.3d 270 (Tenn. Ct. App. 2007). There, a police chief issued a press release informing the public "that he had disempowered" an officer within his department without including any details of the incident leading to the disempowerment. *Id.* at 286. A local news channel broadcast a story about the disempowerment,

---

cover reports of charges made, without results, to a policeman or prosecutor"); *Snitowsky v. NBC Subsidiary (WMAQ-TV), Inc.*, 696 N.E.2d 761, 768 (Ill. App. Ct. 1998) (stating "that in general charges made to the police are not rendered official acts by the officer's act of recording the charge"); *Howell v. Enter. Publ'g Co.*, 920 N.E.2d 1, 18 n.14 (Mass. 2010) (noting "that mere allegations made to public officials cannot support the privilege; something must imbue the allegations with an official character").

which included details about the underlying incident obtained through its own investigation. *Id.* The appellant, the disempowered officer's brother-in-law who the local news channel named in its broadcast, filed a libel claim. *Id.* at 280. The court rejected the news channel's argument that the fair report privilege protected the entire broadcast. *Id.* at 286. Specifically, the court distinguished between the information that the police chief made available through an official action, i.e., a press conference, and the information that the news channel obtained through its own investigation and outside of any official action. *Id.* at 287. The latter information "[did] not reflect official agency action and [did] not have sufficient authoritative weight" to fall within the fair report privilege. *Id.* (internal citation and quotation omitted).

We agree with the approach used in *Lewis*. The fair report privilege protects publications reporting on official actions and proceedings. When a publication goes beyond the scope of what was revealed by an official action, we must determine whether the additional information, on its own, falls within the fair report privilege. As discussed above, the AP article reported on the allegations in the citizen's complaint, and that statement is not an official action to which the fair report privilege applies. Accordingly, the LVMPD's press conference and publicly released email did not bring the AP article within the privilege because neither the press conference nor the email addressed the substance of the allegations that were described in the article.

*The LVMPD's turnover of the documented citizen's complaint in response to a public records request did not bring AP Respondents' article within the fair report privilege*

The last issue we address is whether the LVMPD, by providing the citizen's complaint to Garcia Cano pursuant to the NPRA, specifically

NRS 239.0105(2)(c), brought the AP's article reporting on the allegations within the fair report privilege. Relying on *Northland Wheels Roller Skating Center, Inc. v. Detroit Free Press, Inc.*, 539 N.W.2d 774 (Mich. Ct. App. 1995), AP Respondents argue that records generally available to the public are subject to the fair report privilege. While AP Respondents are correct that the court in *Northland Wheels* included a citizen's complaint within the fair report privilege, that court based its decision upon a Michigan statute that expressly included such reports within Michigan's fair report privilege. *Id.* at 779; *see also* Mich. Comp. Laws Ann. § 600.2911(3) (West 2010) (including a "written or recorded report or record generally available to the public" within Michigan's statutory fair report privilege). Our fair report privilege is a common law privilege, however, and Nevada courts have not applied the privilege in the same way required by Michigan's statute. Therefore, we conclude that AP Respondents' reliance on *Northland Wheels* is misplaced.

In addressing Massachusetts' application of the common law fair reporting privilege, the Massachusetts Supreme Judicial Court recently declined to extend the fair report privilege to all police blotter entries, even though the entries are public records. *Butcher*, 136 N.E.3d at 731-32; *see also* Mass. Gen. Laws Ann. ch. 41, § 98F (West 2006) (providing that "[a]ll entries in [police department] daily logs shall . . . be public records available . . . to the public"). The court weighed the underlying policy behind the fair report privilege and the societal interest in preventing defamation in concluding that the fair report privilege does not apply solely because the police blotter entries are subject to disclosure as public records. *Butcher*, 136 N.E.3d at 732. In particular, the court was concerned that extending the privilege to all police blotter entries "would create a risk that

blotters could become a tempting device for the unscrupulous defamer who could report, anonymously, scandalous accusations, knowing they could be given wide currency in the tabloids and newspapers." *Id.* (internal quotations omitted). Therefore, the court held that the ability of the public to inspect a government record was not determinative as to whether the fair report privilege applied. *Id.* at 730. Instead, the court concluded that such records fell within the fair report privilege only if "they [were] reports of either official statements or official actions." *Id.*

We agree with the approach used in *Butcher*, which is consistent with our own jurisprudence on the fair report privilege, cautioning against expansions of the privilege that would "allow the spread of common innuendo that is not afforded the protection accorded to official or judicial proceedings." *Wynn*, 117 Nev. at 16, 16 P.3d at 430. If we were to expand the fair report privilege to all citizen complaints to police regardless of whether official action was taken thereon solely because they are publicly available under the NPRA, a clever defamer could make defamatory accusations to law enforcement, knowing that the media could republish those accusations without liability. Accordingly, we must reject a blanket expansion of the fair report privilege that includes all records that are available under the NPRA. Instead, we hold, consistent with the Restatement (Second), that whether a report on such a record falls within the fair report privilege turns on whether the record is a report of an official action or proceeding. Here, the report outlined in the AP article is not a report of an official action or proceeding. Therefore, it does not fall within

SUPREME COURT
OF
NEVADA

(O) 1947A

14

the fair report privilege even though it is available to the press under the NPRA.[8]

## CONCLUSION

As relevant here, the fair report privilege shields a defendant from liability for publication of defamatory content contained within reports of official actions regarding issues of public concern so long as the publication is a fair, accurate, and impartial summary of the underlying occurrence. Applying these principles to the facts of this case and considering the common law development of the privilege, we conclude that the district court erred by extending the fair report privilege. The AP article republished allegations of criminal conduct contained in a citizen's complaint on which law enforcement did not take any official action. Accordingly, the report on these allegations, which were not investigated, evaluated, or pursued by law enforcement in any way, is not within the scope of the fair report privilege. Therefore, we reverse the district court's order dismissing Wynn's complaint on fair report privilege grounds.

On remand, consistent with the parties' stipulation, the district court shall evaluate AP Respondents' anti-SLAPP motion to dismiss under NRS 41.660. Specifically, the district court shall determine whether AP Respondents can meet their burden under the first prong of the anti-SLAPP framework under NRS 41.660(3)(a). If so, the district court shall determine whether Wynn, as a public figure, can demonstrate a probability of

---

[8]Because we hold that the citizen's complaint at issue is not an official action or proceeding within the meaning of the fair report privilege, we need not address whether the district court properly determined that Garcia Cano's report was a fair, accurate, and impartial summary of the allegations contained therein.

prevailing on his defamation claim under NRS 41.660(3)(b).

_____, J.
Cadish

We concur:

_____, C.J.
Pickering

_____, J.
Gibbons

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

_____, J.
Silver

SUPREME COURT
OF
NEVADA

(O) 1947A

16